Peter E. Perkowski (SBN 199491)
peter@perkowskilegal.com
PERKOWSKI LEGAL, PC
515 S. Flower Street
Suite 1800
Los Angeles, California 90071
Telephone: (213) 340-5796

Attorneys for Plaintiff
RN CARE CONSULTANTS, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RN CARE CONSULTANTS, LLC, | Case No. 2:25-cv-01326 |
| *Plaintiff*, | **COMPLAINT** |
| v. | |
| CONCIERGE NURSING REFERRAL SERVICES, LLC and THEKEY, LLC, | |
| *Defendants*. | *Jury Trial Demanded* |

Plaintiff RN Care Consultants, LLC ("RNCC"), for its Complaint against Defendants Concierge Nursing Referral Services, LLC and TheKey, LLC, alleges as follows:

**PRELIMINARY STATEMENT**

1.     This is an action for infringement of RNCC's federally registered service mark HEAL AT HOME under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for related claims under the statutory and common laws of the State of California, all arising from Defendants' unauthorized use of the HEAL AT HOME mark in connection with the marketing, advertising, promotion, offering for sale, and sale of their services, and from Defendants' breach of a Trademark Licensing Agreement related to the HEAL AT HOME mark.

## JURISDICTION

2. This action arises under the Lanham (Trademark) Act, 15 U.S.C. § 1051 *et seq.*, as amended. This Court therefore has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121, as well as under 28 U.S.C. § 1331 (federal question) and § 1338 (trademarks). As to the related state-law claims, the Court has jurisdiction under 28 U.S.C. § 1367 (supplemental jurisdiction).

## PARTIES

3. RNCC is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Texas.

4. RNCC provides care solutions for seniors, patients, and their families by determining the best options and strategies to maintain health and wellness, offering guidance and support in making the most informed decision for each client and family, whether the client wishes to remain in home or relocate to assisted living, Alzheimer's/dementia care environments, acute rehab, nursing home, or board and care.

5. Defendant Concierge Nursing is a limited liability company that, according to documents on file with the California Secretary of State, is organized and registered under the laws of the State of Delaware and has a principal place of business in La Jolla, California.

6. Defendant TheKey is a limited liability company that, according to documents on file with the California Secretary of State, is organized under the laws of the State of Delaware and has a principal place of business in La Jolla, California.

7. According to documents on file with the California Secretary of State, TheKey is a manager or member of the Concierge Nursing limited liability company.

8. TheKey claims to be the "leading private pay home care provider in the nation," helping clients achieve long-term aging at home with comprehensive, concierge-based care.

9. On information and belief, currently and at all relevant times, there existed a unity of interest and ownership between each Defendant such that any individuality or separateness between them has ceased. Further, on information and belief, Defendants are the alter egos of one another in that they carried on their business together, including with respect to the wrongful conduct alleged in the Complaint, without regard to their separate existence and with an agreement to share in the profits and spoils of their wrongful conduct. Adherence to the fiction of the separate existence between Defendants would permit an abuse of the corporate privilege and would sanction fraud, promote injustice, and otherwise aid in the commission of unlawful conduct.

10. The Court has personal jurisdiction over Concierge Nursing because, having a principal place of business in La Jolla, California, Concierge Nursing can be said to be "at home" in this State and judicial district.

11. The Court has personal jurisdiction over TheKey because, having a principal place of business in La Jolla, California, TheKey can be said to be "at home" in this State and judicial district.

12. Venue in this judicial district is proper under a forum selection clause contained in a Trademark Licensing Agreement between RNCC and Concierge Nursing, which provides: "For any proceeding arising for or related to this Agreement the parties agree that state and federal courts in the County of Los Angeles have jurisdiction and are the appropriate venue, and the parties consent to proceed in such courts." Trademark Licensing Agreement ¶ 5.2.

## BACKGROUND FACTS

### *Plaintiff's Rights in the Mark*

13. RNCC is the owner of valid and subsisting United States Service Mark Registration No. 5,289,133 on the Principal Register in the United States Patent and Trademark Office for the service mark HEAL AT HOME (the "Mark"). The Registration issued on September 19, 2017.

14. Registration No. 5,289,133 has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.

15. The Mark is registered in International Class 44 for use in connection with geriatric health care management services, and in International Class 45 for use in connection with patient advocacy and case management services for the elderly, disabled, injured and infirm persons, including the coordinating the procurement and administration of medication, as well as patient advocate services in the fields of geriatric care, long-term care, and care of the injured and disabled.

16. RNCC, itself or through its predecessors and authorized licensees, has used the Mark since at least September 2012.

### *The Trademark License Agreement*

17. In or around April 6, 2018, RNCC licensed the Mark to a California entity, Heal at Home Nursing, Inc. ("HAHN"), which was owned by Courtney Hogenson and Kelly Rosenberry. Under this license agreement, HAHN continuously used the mark through February 2022..

18. In February 2022, Concierge Nursing purchased the assets of HAHN, as memorialized in an agreement titled Asset Purchase Agreement by and among Concierge Nursing Referral Services, LLC, Heal at Home Nursing, Inc., and Courtney Hogenson and Kelly Rosenberry (the "APA").

19. The APA transaction included several subsidiary agreements among the parties. One such agreement terminated the April 2018 license of the Mark from RNCC to HAHN. In another agreement, RNCC licensed the Mark to Concierge Nursing (the "Trademark Licensing Agreement" or "TLA").

20. The TLA was not an assignment of the Mark from RNCC to Concierge Nursing. Rather, the TLA provided that RNCC retained sole ownership of the Mark and granted to Concierge Nursing only a time-limited, exclusive license to use and display the Mark in connection with the marketing and sale of certain services. TLA ¶¶ 1.1, 1.2.

21. The TLA also contained restrictions on the licensee's use of the Mark. Under the TLA, the licensee agreed that it would not (a) challenge RNCC's ownership of the Mark, or assist anyone in doing so, or (b) "grant or attempt to grant a security interest in, or otherwise encumber, the [Mark] or record any security interest or encumbrance against any application or registration related to the [Mark] in the United States Patent and Trademark Office or elsewhere." TLA ¶ 2.4.

22. On information and belief, Concierge Nursing sublicensed to TheKey the exclusive right under the TLA to use and display the Mark.

23. The TLA contains a mutual indemnification clause. It provides: "The parties agree to indemnify, defend, and hold harmless the other … from and against and in respect of any and all … losses, damages, liabilities, … costs and expenses, including without limitation reasonable legal fees and expenses resulting from, arising out of, or imposed upon or incurred by reasons of any breach of any … covenant contained in this Agreement." TLA ¶ 4.3.

24. The TLA is governed by California law. TLA ¶ 5.2.

### Breach of the TLA

25. A few months after the parties entered into the TLA, the United States Patent and Trademark Office ("USPTO") recorded a conveyance purporting to transfer the entire interest in the Mark from RNCC to TheKey. The recording was the result of a request made to the USPTO by legal counsel acting on behalf of TheKey.

26. Counsel's request to record the conveyance was based on an undated document entitled "Assignment," effective June 17, 2022, by which RNCC purported to assign to TheKey, among other things, the "entire right, title, and interest in and to [the Mark] … and the United States Registration No. 5,289,133 and all renewals thereof." This fraudulent "Assignment" was signed on behalf of "RN CARE CONSULTANTS, LLC" by Nina Kani, whose title was listed as "General Counsel & Chief Compliance Officer."

27. The June 17, 2022, "Assignment" was a forgery: Nina Kani was never an employee, owner, member, manager, or agent of RNCC, and she never at any point had authorization to sign the "Assignment," or to perform any other act, on behalf of RNCC.

28. On information and belief, the fraudulent assignment and its recordation with the USPTO was performed with the knowledge, assistance, participation, facilitation, or authorization of Concierge Nursing.

29. The fraudulent assignment and its recordation with the USPTO were contrary to the express terms of the TLA and thus a breach of the TLA.

30. RNCC was unaware of the fraudulent assignment and learned of the recordation with the USPTO only in September 2022. RNCC instructed its trademark counsel to communicate with TheKey to seek correction of the fraudulent record with the USPTO. Despite several demands, TheKey failed to correct the record, and RNCC was required to engage trademark counsel to do so.

31. Based on the work of RNCC's trademark counsel, and at great cost and expense to RNCC, in April 2024 the USPTO recorded a conveyance that restored RNCC as the recognized owner of the Mark and its registration.

32. Despite several requests, Defendants have not reimbursed RNCC for its costs and expenses, including reasonable attorney fees, incurred as a result of the breach of the TLA. Those costs and expenses continue to accrue, including without limitation from the necessity of having to commence this action.

### *TheKey's Infringement of the Mark*

33. The TLA's effective date was February 14, 2022. By its own terms, the TLA expired two years after the effective date, or February 14, 2024. TLA ¶ 3.3.

34. On or about February 1, 2024, RNCC's owner sent an email to TheKey's Chief Financial Officer, its General Counsel & Chief Compliance Officer, and its Senior Vice President of Business Development. The email reminded TheKey

that the TLA was set to expire two weeks later and asked them to "take whatever steps necessary to end TheKey's use of the trademark in all respects."

35. Nevertheless, TheKey continued to use and display the Mark in connection with the marketing and sale of its services even after the TLA's expiration on February 14, 2024.

36. The infringement is ongoing: TheKey continues to use the Mark in at least these ways: (a) in the website URL healathomenursing.com, which now redirects to a landing page at thekey.com (through at least December 6, 2024, the URL prominently displayed the Mark); (b) in the LinkedIn social media account located at https://www.linkedin.com/company/heal-at-home-llc/, which on information and belief is owned, controlled, or operated by TheKey; and (c) the $X$ (formerly Twitter) social media account located at https://x.com/healnursing, which on information and belief is also owned, controlled, or operated by TheKey.

37. In December 2024, by letter addressed to its General Counsel & Chief Compliance Officer, RNCC demanded that TheKey cease its unauthorized uses of the Mark. As of the filing of this complaint, TheKey has not done so.

## CLAIM ONE

## Trademark Infringement, 15 U.S.C. § 1114

## (Against TheKey)

38. All prior paragraphs are incorporated into this claim.

39. RNCC's Mark is inherently distinctive as evidenced by its trademark registration, which is now incontestable.

40. After its authorization to use the Mark ended with the expiration of the TLA, TheKey continued to use the Mark in U.S. commerce in connection with the advertising, marketing, promotion, sale, and offer for sale of its own services.

41. TheKey is continuing its infringing activity despite being made aware that their right to use the Mark ended with the expiration of the TLA and despite demands from RNCC that it cease and desist.

42. TheKey's services are highly similar, if not identical, to RNCC's services. Therefore, the above-alleged uses of the Mark by TheKey are likely to cause consumer confusion as to the source, origin, sponsorship, or endorsement of TheKey's services. Specifically, TheKey's actions are likely to mislead the public into concluding that its services originate with or are authorized by RNCC, which will damage both RNCC and the public.

43. TheKey's unauthorized uses of the Mark in interstate commerce as alleged above constitutes trademark infringement under 15 U.S.C. § 1114(1) and has caused and is likely to cause consumer confusion, mistake, or deception.

44. As a direct and proximate result of TheKey's infringement, RNCC has suffered and will continue to suffer damages, including loss of income, and TheKey has and will continue to unfairly acquire income, profits, and goodwill, including the retention of a license fee, for the unauthorized use of the Mark.

## CLAIM TWO

## Unfair Competition, 15 U.S.C. § 1125(a)

### (Against TheKey)

45. All prior paragraphs are incorporated into this claim.

46. TheKey's unauthorized marketing and sale of its services in interstate commerce using the Mark constitutes use of a false designation of origin, which is likely to cause confusion or mistake or to deceive as to the affiliation, connection, or association of TheKey with RNCC, or as to the origin, sponsorship, or approval of TheKey's services by RNCC.

47. TheKey's actions alleged above constitute unfair competition in violation of 15 U.S.C. § 1125(a).

48. As a direct and proximate result of TheKey's infringement, RNCC has suffered and will continue to suffer damages, including loss of income, and TheKey has and will continue to unfairly acquire income, profits, and goodwill, including the retention of a license fee for the unauthorized use of the Mark.

## CLAIM THREE

### Breach of the TLA

### (Against Concierge Nursing)

49. All prior paragraphs are incorporated into this claim.

50. The TLA is a valid and enforceable contract on the terms described above.

51. RNCC performed all applicable obligations, conditions, and covenants required by the TLA except to the extent that such obligations, conditions, or covenants have been excused or prevented by the conduct of Concierge Nursing.

52. Concierge Nursing has failed and refused, and continues to fail and refuse, to perform its obligations under the TLA and, as alleged above, has breached the TLA by, without limitation (a) causing or facilitating the fraudulent transfer of ownership of the Mark to TheKey and the subsequent recording of that fraudulent conveyance with the USPTO, and (b) failing and refusing to reimburse RNCC for the legal fees and expenses it incurred as a result of the breaches of the TLA.

53. As a proximate cause of Concierge Nursing's breaches, RNCC has been damaged in an amount to be proven at trial. RNCC's damages continue to accrue, as it is incurring attorney fees and costs in attempting to recover its damages.

## CLAIM FOUR

### Unfair Business Practices, Cal. Bus. & Prof. Code § 17200

### (Against All Defendants)

54. All prior paragraphs are incorporated into this claim.

55. Under California Business & Professions Code § 17200, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice."

56. Defendants' conduct alleged above was "unfair" because it is dishonest, harms competition, deprives RNCC of fair compensation for use of its intellectual

property, and because Defendants' have retained financial benefits of using RNCC's intellectual property without compensating RNCC.

57. Defendant's conduct alleged above was "unlawful" because it violates federal and state law, including without limitation 15 U.S.C. § 1114(1), 15 U.S.C. § 1125(a), and California Civil Code § 1572.

58. The alleged acts constitute unlawful, unfair, or fraudulent business practices in violation of § 17200.

59. Under California Business & Professions Code § 17203, "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction" and further that the court may make orders "necessary to restore to any person in interest any money or property … which may have been acquired by means of such unfair competition."

60. Accordingly, by reason of Defendants' violation of § 17200, RNCC is entitled to an order requiring Defendants to disgorge all profits obtained and acquired by means of the unfair competition, including all profits gained or retained as a result of its unfair and unlawful conduct.

61. Defendants acts alleged above were intentional, willful, and bad faith such that they have acted with oppression, fraud, or malice, entitling RNCC to an award of punitive damages.

## CLAIM FIVE

## Unjust Enrichment

## (Against TheKey)

62. All prior paragraphs are incorporated into this claim.

63. TheKey has unlawfully and financially benefitted from unauthorized use of RNCC's intellectual property, including without limitation by retaining amounts that would have been due to RNCC as a license fee for use of the Mark.

64. It would be unjust to allow TheKey to retain the benefits that they have realized or retained by their wrongful conduct alleged above.

65. TheKey is required to disgorge to RNCC all profits made or monies retained as a result of the unauthorized conduct alleged above.

66. Defendants acts alleged above were intentional, willful, and bad faith such that they have acted with oppression, fraud, or malice, entitling RNCC to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment:

A. In favor of Plaintiff and against Defendants on all claims;

B. Declaring that Plaintiff's registered HEAL AT HOME Mark has been and continues to be infringed by Defendants in violation of 15 U.S.C. § 1114(1);

C. Declaring that Defendants' ongoing use of the HEAL AT HOME Mark constitutes federal unfair competition in violation of 15 U.S.C. § 1125(a);

D. Permanently enjoining Defendants and their principals, agents, servants, employees, successors, and assignees and all those in privity, concert, or participation with them from using the HEAL AT HOME Mark, alone or combined with other words, designs, logos, or symbols, as a trademark, service mark, or trade name component or other to market, advertise, promote, sell, or offer to sell Defendants' services;

E. Under 15 U.S.C. § 1116(a), ordering Defendants to file with the Court and serve on Plaintiff with 30 days after issuance of an injunction a report in writing and under oath setting forth the manner and form in which Defendants have complied with the injunction;

F. Under 15 U.S.C. § 1118, ordering Defendants and all others acting under their authority, at their cost, to deliver up and destroy all devices, literature, advertising, labels, and other material bearing the HEAL AT HOME Mark;

G. Under 15 U.S.C. § 1117, awarding Plaintiff all damages it sustained as a result of Defendants' acts of infringement and unfair competition, as well as all profits received by Defendants because of its infringing actions;

H. Awarding Plaintiff compensatory damages according to proof;

I. Under California Business & Professions Code § 17203, requiring Defendants to disgorge all profits associated with the wrongful conduct alleged;

J. Under California Business & Professions Code § 17203, permanently enjoining Defendants and their principals, agents, servants, employees, successors, and assignees and all those in privity, concert, or participation with them from using the HEAL AT HOME Mark, engaging in any other activity constituting unfair competition in relation to the HEAL AT HOME Mark, and assisting another person or entity in doing so.

K. Under California Civil Code § 3294, for punitive damages;

L. Ordering restitution or reparation by Defendants to Plaintiff of any benefit or money unjustly retained by its wrongful conduct;

M. Under 15 U.S.C. § 1117, California Business & Professions Code § 17204, any other applicable law, and as authorized by contract, awarding attorney fees, costs and expenses, and any other amounts authorized under law.

N. Awarding pre- and post-judgment interest as allowed by law;

O. Granting other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all issues permitted by law.

Dated: February 17, 2025      Respectfully submitted,

**PERKOWSKI LEGAL, PC**

By:   /s/ Peter Perkowski
      Peter E. Perkowski

      Attorneys for Plaintiff
      RN CARE CONSULTANTS, LLC